**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Ricardo Enrique Luna, ) | No. CV-12-0384-TUC-DTF |
| Plaintiff, ) | **ORDER** |
| vs. ) | |
| Carolyn W. Colvin, ) | |
| Acting  Commissioner of ) | |
| Social Security Administration, ) | |
| Defendant. ) | |

Plaintiff Ricardo Luna brought this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision by the Commissioner of Social Security (Commissioner). Before the Court are Plaintiff's opening brief, Defendant's Response and a Reply (Docs. 17, 20, 23.) The parties consented to exercise of jurisdiction by a Magistrate Judge, pursuant to 28 U.S.C. § 636(c)(1). (Docs. 8, 11.) The Court finds this case should be remanded for further proceedings.

## PROCEDURAL HISTORY

Luna filed an application for Supplemental Security Income (SSI) on March 11, 2009.[1] (Administrative Record (AR) 133.) Luna alleged disability from March 1, 2009. (AR 133.) Luna's application was denied upon initial review (AR 69) and on reconsideration (AR

---

[1]    At the hearing, Plaintiff's counsel and the ALJ discussed Plaintiff's possible eligibility for Disability Insurance Benefits (DIB), in addition to SSI. (AR 42-44.) In his brief, Plaintiff notes the issue is irrelevant unless the case is remanded. There is no record that Plaintiff has, to date, sought DIB; therefore, the Court evaluates only the application for SSI currently before it. Plaintiff can address this further on remand.

1    74). A hearing was held on September 30, 2009 (AR 39-66), after which ALJ Larry E.

2    Johnson found that Luna was not disabled (AR 10-17). The Appeals Council denied Luna's

3    request to review the ALJ's decision. (AR 1.)

4                                    **FACTUAL HISTORY**

5           Luna was born on December 14, 1966, making him 42 at the alleged onset date of his

6    disability. (AR 133.) From 1993 to 2005, Luna worked in construction and as a cook, earning

7    negligible amounts some years up to approximately $11,000 for a few of the years. (AR 141,

8    154, 156.) Luna stopped working in May 2005, due to surgery for ulcers. (AR 154.) Luna

9    alleges he is unable to work due to psychological impairments. He has received all of his

10   mental health services from La Frontera, with records spanning from January 2009 to

11   September 2011.

12          The ALJ found that Luna had one severe impairment, affective disorder. (AR 12.) The

13   ALJ noted that Luna alleged additional mental health issues, PTSD, mood swings, auditory

14   hallucinations and lack of concentration, but determined that these were not severe in light

15   of his lack of participation in treatment and/or the fact that they were resolved with

16   medication. (AR 12-13.) The ALJ determined that Luna had the capacity to perform work

17   at all exertional levels with limited exposure to co-workers, supervisors and the general

18   public. (AR 15.) The ALJ ultimately concluded Luna could perform his past relevant work

19   as a cook and, based on the Medical-Vocational Rules, Luna could perform other work

20   available in the national economy. (AR 16-17.)

21                                  **STANDARD OF REVIEW**

22          The Commissioner employs a five-step sequential process to evaluate SSI claims. 20

23   C.F.R. § 416.920; *see also Heckler v. Campbell,* 461 U.S. 458, 460-462 (1983). To establish

24   disability the claimant bears the burden of showing he (1) is not working; (2) has a severe

25   physical or mental impairment; (3) the impairment meets or equals the requirements of a

26   listed impairment; and (4) claimant's RFC precludes him from performing his past work. 20

27   C.F.R. § 416.920(a)(4). At Step Five, the burden shifts to the Commissioner to show that the

28

claimant has the RFC to perform other work that exists in substantial numbers in the national economy. *Hoopai v. Astrue*, 499 F.3d 1071, 1074 (9th Cir. 2007). If the Commissioner conclusively finds the claimant "disabled" or "not disabled" at any point in the five-step process, he does not proceed to the next step. 20 C.F.R. § 416.920(a)(4).

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995) (citing *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989)). The findings of the Commissioner are meant to be conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "more than a mere scintilla but less than a preponderance." *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999) (quoting *Matney v. Sullivan*, 981 F.2d 1016, 1018 (9th Cir. 1992)). The court may overturn the decision to deny benefits only "when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Aukland v. Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001). This is so because the ALJ "and not the reviewing court must resolve conflicts in the evidence, and if the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ." *Matney,* 981 F.2d at 1019 (quoting *Richardson v. Perales*, 402 U.S. 389, 400 (1971)); *Batson v. Comm'r of Soc. Sec. Admin.,* 359 F.3d 1190, 1198 (9th Cir. 2004). The Commissioner's decision, however, "cannot be affirmed simply by isolating a specific quantum of supporting evidence." *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th Cir. 1998) (citing *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989)). Reviewing courts must consider the evidence that supports as well as detracts from the Commissioner's conclusion. *Day v. Weinberger*, 522 F.2d 1154, 1156 (9th Cir. 1975).

## **DISCUSSION**

Luna alleges the ALJ committed four errors, that he failed to properly evaluate the opinions of Luna's treating providers; failed to properly evaluate lay witness testimony; failed to properly evaluate Luna's credibility; and improperly relied upon the vocational guidelines at Step Five.

1   **Treating Providers**

2       Plaintiff argues the ALJ failed to give weight to the favorable medical evidence from

3   his treating records. Plaintiff also argues there was no basis to dismiss the opinions of his

4   treating medical professionals. However, Plaintiff does not point to any "medical source

5   opinions," and there are none in the records. See 20 C.F.R. § 416.913(c) (discussing medical

6   source opinions about the claimant's abilities to work). Therefore, the Court evaluates solely

7   how the ALJ treated Luna's medical records from La Frontera.

8       Plaintiff contends the ALJ discounted his medical records on improper grounds. The

9   ALJ found that Plaintiff had one severe impairment, an affective disorder. (AR 12.) The ALJ

10  failed to explain his dismissal of the uncontradicted diagnoses by Dr. Hanlon, an acceptable

11  medical source, as defined in the Social Security Administration regulations, 20 C.F.R.

12  § 416.913(a). In an initial psychiatric diagnostic interview, Dr. Hanlon diagnosed Luna with

13  generalized anxiety, a psychotic disorder NOS, and PTSD. (AR 314.) Upon remand, the ALJ

14  must reconsider these diagnoses and what severe impairments Plaintiff has established.

15      The ALJ stated that he was discounting Plaintiff's allegations of other mental

16  impairments – PTSD, mood swings and auditory hallucinations – because: (1) Plaintiff's

17  treatment was solely through a court-ordered program, (2) his participation in therapy was

18  sporadic and he missed numerous sessions, (3) his nightmares, auditory hallucinations and

19  depression were resolved with medication, and he was stable when compliant with

20  medication, and (4) his setbacks were primarily related to alcohol relapse. (AR 12-13, 15-16.)

21  The Court finds this is not an accurate representation of the record as a whole and is not

22  supported by substantial evidence.

23      First, although Plaintiff appears to have begun treatment because it was required, he

24  completed the mandatory program in January 2010 (AR 480) and he was still receiving

25  treatment and medication through the same provider in July 2011 (AR 636). Second, it is

26  accurate that Plaintiff missed numerous therapy sessions but he continued to request therapy

27  and medication, including affirmatively requesting that therapy be reinstated when his

28  therapist dropped him for excessive missed appointments. (AR 269, 454.) An ALJ may not

draw inferences based on a failure to seek treatment without inquiring for an explanation by the claimant or considering other record evidence that may explain the lack of care. SSR 96-7p. The ALJ did not seek an explanation for lack of treatment during the hearing or from the record. (AR 28-42.) Additionally, lack of treatment is a questionable basis on which to reject mental health claims because mental illness may impair judgment resulting in failure to seek assistance. *Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996); *Pate-Fires v. Astrue*, 564 F.3d 935, 945-46 (8th Cir. 2009). Unlike an assertion of pain, for which failure to seek treatment is incongruous with a disabling condition, not seeking mental health treatment is consistent with the impairment. This is evidenced in this case by Luna's anxiety and paranoia which often prevented him from leaving his house.

Third, the record does not demonstrate that Plaintiff was consistently stable when he complied with his prescribed medication. The record indicates that even when Luna did follow the prescribed medication regimen, the drugs were not consistently effective in relieving his symptoms.[2] In March 2009, Luna indicated his nightmares were relieved and he was having few hallucinations but he was still anxious; in May and June 2009, he was anxious, having a hard time leaving his house, depressed, hearing voices, and requested a medication change; in August 2009, Luna was depressed and hearing voices but volunteering, however, he had quit by the following month because he was paranoid and afraid to leave his house, and the doctor altered his medication again; in January and February 2010, Luna indicated his medications were not working well and they were changed because many of his symptoms were not controlled; in March and April, he reported some improvement from the switch to Prozac; by May, he felt the medications were not working well and he was depressed; in June and July 2010, he had been inconsistent with his

---

[2]     It is difficult to decipher from the record when Plaintiff was in full compliance with his prescribed medication. For example, on September 22, 2010, Luna reported running out of his medication and a bridge prescription was provided, but on October 8, 2010, he stated that he had not taken his medication for two and a half months. (AR 405, 599, 603.) Also on October 8, he told a different La Frontera employee that he felt his medications were not working well at that time but did not indicate that he was not taking them. (AR 612.)

medication and he was very anxious and depressed; in August and October 2010, Luna indicated medication was not effective (and he may have been not compliant in taking them) and they were changed; in November 2010, when he was having hallucinations, restless sleep and racing thoughts, his medications were changed again; and after running out of medication and restarting, they were changed again in June and July 2011. (AR 275, 277, 289, 291, 295, 305, 351, 356, 359, 366, 369, 371, 372, 379, 387, 405, 412, 426, 433, 476, 477, 486, 489, 491, 493, 495, 512, 514, 581, 584, 612, 636, 639, 660.) There is no extended period of time during which Luna's symptoms were controlled by medication, and his mental health providers continued to alter his prescriptions because they were not wholly effective.

Additionally, Plaintiff was assigned a Global Assessment of Functioning (GAF) score of 48 at the time of intake, January 2009, and it was found to be 50 in January 2011, and 48 in April 2011.[3] (AR 327, 646, 657.) Luna also was determined to be seriously mentally ill for purposes of Arizona's behavioral health system, based on a diagnosis of schizophrenia. (AR 337.) The ALJ failed to consider this evidence.

Fourth, Luna's setbacks were not primarily related to a relapse with alcohol. The medical records span from January 2009 to September 2011. (AR 321, 633.) The references to alcohol consumption are limited to three or four specific instances during a few month period, December 2009 to March 2010. (AR 355, 468, 491, 493, 495, 504.) In April 2010, Luna requested medication to decrease his craving for alcohol and the record does not reveal any subsequent issues with alcohol. (AR 359.) The severity of Luna's symptoms do not appear connected to his consumption of alcohol, with the exception of an increase in suicidal

---

[3]    The GAF is a 100-point scale that measures a person's overall level of psychological, social and occupational functioning on a hypothetical continuum. *See* American Psychiatric Ass'n, *Diagnostic & Statistical Manual of Mental Disorders* ("*DSM IV*"), at 32, 34 (4th ed. 2000).  Lower numbers indicate more severe symptoms. A rating of 41 to 50 indicates serious symptoms or "serious impairment in social, occupational, or school functioning." *Id.* at 34; *see also Brueggemann v. Barnhart*, 348 F.3d 689, 695 (8th Cir. 2003) (noting that a GAF of 50 reflects serious limitations and the vocational expert believed it precluded finding work).

1    ideation during that time period. (AR 468, 502, 504, 506.) Rather, it appears that when his

2    symptoms were particularly exacerbated he would turn to alcohol to relieve them.

3         In sum, the Court finds the ALJ failed to give sufficient weight to Luna's medical

4    records or to support his decision with substantial evidence. Upon remand, the ALJ must

5    consider the entirety of the medical record when evaluating Steps Two and Three and

6    Plaintiff's RFC.

7         **Plaintiff's Credibility**

8         The ALJ found Plaintiff's statements concerning the severity of his symptoms not

9    credible to the extent inconsistent with the ALJ's RFC finding.[4] (AR 16.)

10        In general, "questions of credibility and resolution of conflicts in the testimony are

11   functions solely" for the ALJ. *Parra v. Astrue,* 481 F.3d 742, 750 (9th Cir. 2007) (quoting

12   *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982)). However, "[w]hile an ALJ may

13   certainly find testimony not credible and disregard it . . . [the court] cannot affirm such a

14   determination unless it is supported by specific findings and reasoning." *Robbins v. Soc. Sec.*

15   *Admin.,* 466 F.3d 880, 884-85 (9th Cir. 2006); *Bunnell v. Sullivan*, 947 F.2d 341, 345-346

16   (9th Cir. 1995) (requiring specificity to ensure a reviewing court the ALJ did not arbitrarily

17   reject a claimant's subjective testimony); SSR 96-7p. "To determine whether a claimant's

18   testimony regarding subjective pain or symptoms is credible, an ALJ must engage in a two-

19   step analysis." *Lingenfelter v. Astrue,* 504 F.3d 1028, 1035-36 (9th Cir. 2007).

20        "First, the ALJ must determine whether the claimant has presented objective medical

21   evidence of an underlying impairment 'which could reasonably be expected to produce the

22   pain or other symptoms alleged.'" *Id.* at 1036 (quoting *Bunnell,* 947 F.2d at 344). ALJ

23   Johnson found Luna had satisfied part one of the test by proving an impairment that could

---

25   [4]   The Commissioner argues that the ALJ found Luna's activities of daily living (ADL)
26   inconsistent with his alleged symptoms. (Doc. 20 at 8.) The ALJ made no finding of
     inconsistency. When evaluating Step Three, the ALJ determined that Luna had no restrictions
27   in ADL (AR 14) but did not relate this finding to his subsequent credibility assessment (AR
     15-16). Further, as discussed below in relation to lay witness testimony, the ALJ's finding
28   regarding ADL was not supported by substantial evidence.

produce the symptoms alleged. (AR 16.) Second, if "there is no affirmative evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Tommasetti v. Astrue,* 533 F.3d 1035, 1039 (9th Cir. 2008) (quoting *Smolen v. Chater,* 80 F.3d 1273, 1281, 1283-84 (9th Cir. 1996)). The ALJ did not find, and the record does not reveal, any evidence of malingering; therefore, to support his discounting of Luna's credibility regarding the severity of his symptoms, the ALJ had to provide clear and convincing, specific reasons. *See Vasquez v. Astrue*, 572 F.3d 586, 592 (9th Cir. 2008) (quoting *Lingenfelter*, 504 F.3d at 1036).

The ALJ's conclusion that Luna was not entirely credible was based on his finding that when Luna was compliant with his medication he could function and was stable. (AR 15.) Further, the ALJ noted that Luna did not seek consistent therapeutic treatment, but maintained his prescriptions, suggesting he was stable with medication. (AR 16.)

As addressed extensively above, the Court determined that the ALJ's finding – that Plaintiff was stable when taking his medication – was not supported by substantial evidence. This finding is not a clear and convincing reason to reject Plaintiff's credibility. Also discussed above, the ALJ failed to make any inquiry regarding Luna's lack of treatment; therefore, he cannot rely upon it when resolving his claims. As illustrated by Luna's difficulty in leaving his house due to his impairment, lack of treatment for mental illness is not a well-founded reason to reject such claims. *See Nguyen v. Chater*, 100 F.3d at 1465; *Pate-Fires*, 564 F.3d at 945-46. Additionally, Luna never left treatment for an extended period of time. Despite some gaps in therapy, he always sought further medical care. The ALJ erred in his evaluation of Plaintiff's credibility.

**Lay Witness Testimony**

In March 2009, Natalia Luna, Plaintiff's mother, completed a function report about Luna. (AR 164-71.) She stated that "at times" Plaintiff would help out at home and with his grandchild, and on a "good day" he did laundry and household chores. (AR 165, 166.) She stated that he would only go to the grocery store when she was available and that he was too nervous to drive. (AR 167.) She affirmed that Plaintiff needed reminders to go to therapy or

1    doctor's appointments. (AR 168.) She indicated he had problems with his memory,

2    completing tasks, concentration and following instructions. (AR 169.) At the October 2010

3    hearing, she testified that he was paranoid, couldn't function, had memory lapses and forgot

4    things like food in the oven. (AR 60-61.) She felt some of the symptoms might be aggravated

5    by the medication not working properly or Luna not getting the right dosages. (AR 61, 62.)

6         Luna's wife also testified at the hearing, stating that she removed a gun from his hand

7    when he was trying to shoot himself in the head. (AR 63.) She stated that Luna thinks his

8    family members are trying to hurt him, that he's paranoid and psychotic. (AR 63-64.) She

9    noted that on the medications he takes he does not really function and she has to make him

10   take a shower and get dressed. (AR 64.) She also stated that he will not leave the house

11   without her or his mother. (*Id.*) She indicated that, at that time, she and Luna's mother were

12   doing the housework and cooking for him. (AR 64-65.)

13        The ALJ discussed Luna's mother's statement only when evaluating Plaintiff's

14   activities of daily living for Step Three of the analysis. (AR 14.) He mentioned solely the

15   function report and summarized it as establishing that Plaintiff cared for his wife, five

16   children and grandchild, including preparing meals, doing laundry, chores and yard work.

17   (*Id.*) This is not a complete representation of the lay witness testimony, which indicated that,

18   as of March 2009, Luna did some household chores on days he felt good. However, at the

19   time of the hearing, his wife indicated he was not doing any of those activities and his mother

20   said that things caught on fire in the oven because he forgot them. Further, they both stated

21   he was not functional and he would not leave the house without his wife or mother. The ALJ

22   erred in implicitly rejecting this testimony without providing reasons specific to each witness.

23   *Stout v. Comm'r, Social Sec. Admin.*, 454 F.3d 1050, 1053 (9th Cir. 2006).

24        **Nonexertional Limitations**

25        Luna argues that the ALJ failed to fully consider his nonexertional limitations, which

26   would require the testimony of a vocational expert. Because the Court already is remanding

27   this matter for further proceedings, it does not reach this issue. After the ALJ reconsiders the

28   medical record, Luna's credibility, lay witness testimony, Steps Two and Three, and Luna's

1  RFC, he will have to reassess Steps Four and/or Five. If appropriate at that time, he should
2  obtain the testimony of a vocational expert.

3                                    **CONCLUSION**

4         A federal court may affirm, modify, reverse, or remand a social security case. 42
5  U.S.C. § 405(g). When a court finds that an administrative decision is flawed, the remedy
6  should generally be remand for "additional investigation or explanation." *INS v. Ventura*, 537
7  U.S. 12, 16 (2006) (quoting *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985));
8  *see also Moisa v. Barnhart*, 367 F.3d 882, 886 (9th Cir. 2004). However, if there are no
9  outstanding issues because "the record has been developed fully and further administrative
10 proceedings would serve no useful purpose, the  . . . court should remand for an immediate
11 award of benefits." *Benecke v. Barnhart*, 379 F.3d 587, 593 (9th Cir. 2004). Here,
12 outstanding issues remain because after the ALJ reassesses Luna's severe impairments at
13 Step Two, he must evaluate the remaining steps and Luna's RFC. *See Kent v. Astrue*, 335 F.
14 App'x 673, 675 (9th Cir. 2009). This process may include again scheduling a consultative
15 exam and obtaining vocational testimony as necessary. On remand, Plaintiff should clarify
16 if he is also seeking DIB and, if so, should complete any necessary steps to pursue such
17 benefits.

18        Accordingly,

19        **IT IS ORDERED** that this case is remanded to the ALJ for a new hearing and further
20 proceedings, pursuant to sentence four of 42 U.S.C. § 405(g). The Clerk of Court should
21 enter judgment and close this case.

22        DATED this 28th day of May, 2013.

                                    _____
                                         D. Thomas Ferraro
                                       United States Magistrate Judge